UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Peiker Acustic, Inc. and
Peiker Acustic Gmbh & Co. Kg,

       Plaintiffs,                      U.S. District Court Case No. 2:10cv-11378

v

                                        Lower Court Case No. 2010-108082-CK

Patrick Kennedy,

       Defendant.
_____/

Miller, Canfield, Paddock and Stone, PLC
Frederick A. Acomb (P44523)
Mary K. Griffith (P77284)
Attorneys for Plaintiffs
150 W Jefferson, Suite 2500
Detroit, MI 48226-4415
(313) 963-6420
acomb@millercanfield.com
griffith@millercanfield.com

Colombo & Colombo, P.C.
Michael J. O'Shaughnessy (P
Alycia Pallach Wesley (P66059)
Attorneys for Defendant
40701 Woodward Ave, Suite 50
P.O. Box 2028
Bloomfield Hills, MI 48303-2028
p (248) 645-9300
f (248) 645-5418
mjo@colombopc.com
apw@colombopc.com
_____/

## NOTICE OF REMOVAL

TO:    The Judges of the United States District Court,
           Eastern District of Michigan, Southern Division

1

Defendant, Patrick Kennedy ("Defendant"), gives notice of the removal of this action to the United States District Court for the District of Michigan. The basis for removal of this action is 28 USC 1332 and 1441(b).

As grounds for removal, Defendant states as follows:

1. On February 26, 2010, Plaintiffs filed a Complaint in the Circuit Court, Sixth Judicial Circuit Court of Oakland County, Michigan, Case No. 10-108082-CK. A copy of the Summons and Complaint is attached as **Exhibit A**.

2. The Summons and Complaint constitutes all process, pleadings and orders served on Defendant as of the date of this Notice.

3. The Summons and Complaint were served on Defendant on March 10, 2010 by certified mail.

4. The filing of this Notice of Removal is timely in that Defendant filed the Notice within thirty days after receipt by Defendant of a copy of the initial pleading as required by 28 USC 1446(b).

5. This Court has original subject matter jurisdiction pursuant to 28 USC 1332(a)(1) in that:

    (a) This civil action is between citizens of different states.

    (b) Defendant is a Colorado resident. See attached Affidavit of Patrick Kennedy, **Exhibit B**.

    (c) Plaintiff Peiker Acustic GmbH & Co. KG is a German corporation with its principal place of business in Friedrichsdorf, Germany. (See Plaintiffs' Complaint, ¶ 1).

    (d) Plaintiff Peiker Acustic, Inc. is a Delaware corporation with its principal place of business in Texas. (See Plaintiffs' Complaint, ¶ 2).

    (e) The citizenship of Plaintiffs and Defendant is completely diverse.

2

    (f)  The amount in controversy exceeds $75,000.

      (1)  In their Complaint, Plaintiffs seek both monetary damages and injunctive relief, (Complaint, p. 7).

      (2)  The monetary damages sought by Plaintiffs exceed $75,000.

        (a)  The amount claimed by Plaintiffs is "in excess of $25,000 exclusive of interest and costs." (Complaint, ¶4).

        (b)  Where a plaintiff seeks to recover some unspecified amount that is not self-evidently greater or less than the federal amount, the defendant must prove jurisdiction by a preponderance of the evidence. *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993).

        (c)  In determining the amount in controversy, the Court may properly consider the allegations of the state complaint regarding the severity of the Plaintiffs' damages in determining whether the amount in controversy exceeds $75,000. *Kennard v. Harris Corp.*, 728 F.Supp. 453, 454-55 (E.D. Mich. 1989); *Schwenk v. Cobra Mf'g Co.*, 322 F.Supp.2d 676, 679 (E.D. Va. 2004). In their Complaint, Plaintiffs allege that:

          i. Plaintiffs are world leaders in the innovation and development of mobile communications solutions (¶7);

          ii. Plaintiffs have developed over one hundred different models of hands-free car kits (¶9);

          iii. Cellport Systems, Inc. ("Cellport") is Defendant's company (¶10);

          iv. the alleged defamatory statements relate to matters involved in certain past and pending litigation in Colorado between Cellport and Peiker (¶¶11-13);

          v. the allegedly defamatory statements "have prejudiced, and will continue to prejudice Plaintiffs in their business relationships, the conduct of their business, and Plaintiffs' ability to enter into business relationships with others" (¶24);

          vi. Defendant's actions have caused Plaintiffs "substantial economic injury, loss of good will; harm to their business reputations; loss of esteem and standing in the community; [and] loss of business opportunities" (¶30); and

          vii. In addition to compensatory damages, Plaintiff's seek presumed damages, exemplary damages, punitive damages, and attorneys' fees. (p. 7, ¶¶7-9).

(d) In determining the amount in controversy, the Court may also consider affidavits and other extrinsic evidence regarding the amount claimed. *See Gafford*, 997 F.2d at 160-61.

i. Peiker has represented to Cellport that it has sold several million hands-free car kits, or components of such kits since 2002, and has paid Cellport royalties on such products in excess of $1,500,000. *See* attached Affidavit of Patrick Kennedy, ¶5.

ii. In pending litigation with Peiker pending in the United States District Court for the District of Colorado, Cellport has made claims similar to many of the statements alleged to be defamatory in this case. *Id.*, Exhibit 1.

iii. In that same litigation, Peiker has counterclaimed alleging, *inter alia*, that Cellport's claims "cloud[] Peiker's ability to make and sell" certain hands-free car kits, and "interferes with the current and prospective sale and use of such products." *Id.*, Exhibit 2, p. 9, ¶18.

iv. In that same litigation, Peiker alleged that the amount in controversy with respect to its counterclaims exceeds $75,000. *Id.*, p. 7, ¶3.

(e) The preponderance of the evidence demonstrates that the monetary damages sought by Plaintiffs exceed $75,000.

(3) The costs of complying with the injunctive relief sought by Plaintiffs exceed $75,000.

(a) The costs of complying with an injunction may establish the amount in controversy. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006).

(b) In their Complaint in this action, Plaintiffs seek injunctive relief ordering Defendant to:

i. immediately stop selling, marketing, and delivering the book in question (p. 7, ¶1);

ii. direct others to forever refrain and desist from selling marketing, and delivering this book (p. 7, ¶2);

iii. provide an accounting listing the names and contact information for all persons who have received a copy of this book (p. 7, ¶3);

iv. deliver a written retraction to each person who has received a copy of this book, or who has learned of the allegedly defamatory statements made in the book (p. 7, ¶4); and

v. publish a retraction on his website (p. 7, ¶5).

4

    (c) In the event that this injunctive relief is granted, Defendant would incur the following costs of complying with the injunction:

      i. If Defendant complied with an injunction to immediately stop selling, marketing, and delivering the book, it would cost Defendant his out-of-pocket investment to this date of $101,306 incurred in preparing, publishing, publicizing and distributing this book (attached Affidavit of Patrick Kennedy, ¶¶9-10), plus future lost revenues from the sale of the book;

      ii. A reasonable estimate is that it would cost Defendant $6,000 to comply with an injunction to direct others to forever refrain and desist from selling marketing, and delivering this book (*id.*, ¶11);

      iii. A reasonable estimate is that it would cost Defendant $4.500 to provide an accounting listing the names and contact information for all persons who have received a copy of this book (*id.*, ¶12);

      iv. A reasonable estimate is that it would cost Defendant $4,000 to deliver a written retraction to each person who has received a copy of this book, or who has learned of the allegedly defamatory statements made in the book (*id.*, ¶13).

    (d) The preponderance of the evidence demonstrates that the costs of complying with the injunctive relief sought by Plaintiffs exceed $75,000.

  6. Copies of this Notice of Removal are being served on the Plaintiffs and filed with the Clerk of the Circuit Court, Oakland County, Michigan in conformity with 28 USC 1446(d).

        Respectfully submitted,

        COLOMBO AND COLOMBO

      BY: /s/ Michael J. O'Shaughnessy
        MICHAEL J. O'SHAUGHNESSY (P37229)
        Attorneys for Defendant Kennedy
        P.O. Box 2028
        Bloomfield Hills, MI 48303-2028
        (248) 645-9300

Dated: April 7, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 7, 2010, I caused a copy of Defendant's Notice of Removal to be served upon all parties of record by mailing same via U.S. First Class Mail to their respective addresses. I declare under the penalty of perjury that the statement above is true to the best of my information, knowledge and belief.

/s/ Patricia Bash
Patricia Bash

# EXHIBIT A

| Approved, SCAO | Original - Court<br>1st copy - Defendant | OAKLAND COUNTY 10-108082-CK |
|---|---|---|
| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>6th JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | JUDGE EDWARD SOSNICK<br>PEIKER ACUSTI v KENNEDY, PAT |

Court address: 1200 N. Telegraph Road, Dept. 404, Pontiac, MI 48341

Court telephone no.: (248) 452-2159

**Plaintiff's name(s), address(es), and telephone no(s).**
Peiker Acustic, Inc., 1845 Brinston, Troy, MI 48083

Peiker Acustic GmbH & Co. KG, Max Planck Str. 32, Friedrichsdorf, Germany, 49-6172-7670.

v

**Defendant's name(s), address(es), and telephone no(s).**
Pat Kennedy
555 Quail Cir.
Boulder, CO 80304
(303) 474-9720

**Plaintiff's attorney, bar no., address, and telephone no.**
Frederick A. Acomb (P44523)
Miller Canfield Paddock and Stone, PLC
150 W. Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420

**SUMMONS** | NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued: FEB 2 6 2010 | This summons expires: MAY 2 8 2010 | Court clerk: RUTH JOHNSON |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

**COMPLAINT** | Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Troy, Oakland County | Defendant(s) residence (include city, township, or village)<br>555 Quail Cir, Boulder, CO 80304 |
|---|---|
| Place where action arose or business conducted<br>Troy, Oakland County | |

Date: 2/26/10

Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (3/08) SUMMONS AND COMPLAINT    MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

| PROOF OF SERVICE | SUMMONS AND COMPLAINT<br>Case No. |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

☐ **OFFICER CERTIFICATE**  OR  ☐ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required)

Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required)

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee<br>$ | Miles traveled | Mileage fee<br>$ | Total fee<br>$ |

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____, _____ County, Michigan.
Date

My commission expires: _____  Signature: _____
Date                                      Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

on behalf of _____.

Signature

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

Peiker Acustic, Inc. and
Peiker Acustic GmbH & Co. KG,

                Plaintiffs,

v.

Pat Kennedy,

                Defendant.

Case No.

Hon.

OAKLAND COUNTY 10-108082-CK
JUDGE EDWARD SOSNICK
PEIKER ACUSTI v KENNEDY,PAT

---

Miller, Canfield, Paddock and Stone, PLC
Frederick A. Acomb (P44523)
Mary K. Griffith (P77284)
Attorneys for Plaintiffs
150 W. Jefferson, Suite 2500
Detroit, MI 48226-4415
(313) 963-6420
acomb@millercanfield.com
griffith@millercanfield.com

---

There is no other pending or resolved civil action
arising out of the transaction or occurrence alleged in the complaint.

## COMPLAINT

Plaintiffs Peiker Acustic, Inc. and Peiker Acustic GmbH & Co. KG assert their complaint against defendant Pat Kennedy as follows:

### PARTIES

1.     Plaintiff Peiker Acustic GmbH & Co. KG ("Peiker Germany") is a German corporation with its principal place of business in Friedrichsdorf, Germany.

2.     Plaintiff Peiker Acustic, Inc. ("Peiker USA") is a wholly owned subsidiary

of Peiker Germany. Peiker USA is a Delaware corporation, it maintains its principal place of business in Texas, and it maintains an office in Troy, Oakland County, Michigan.

3. Defendant Pat Kennedy ("Kennedy") is an individual and a citizen and resident of Colorado.

## JURISDICTION AND VENUE

4. Peiker Germany and Peiker USA ("Plaintiffs") seek injunctive relief and claim damages in excess of $25,000 exclusive of interest and costs. The Court thus has subject matter jurisdiction pursuant to MCL 600.605.

5. Defendant Pat Kennedy published and then sent and caused to be sent to recipients in Michigan and elsewhere a book entitled "IdeaJacked" (the "Book") containing false and defamatory statements about Plaintiffs resulting in an action for tort. The Court thus has personal jurisdiction over Pat Kennedy pursuant to MCL 600.715.

6. Although Pat Kennedy does not reside in Michigan, Peiker USA has a place of business in Troy, Oakland County, Michigan. Venue is thus proper in Oakland County, Michigan pursuant to MCL 600.1621(b).

## GENERAL ALLEGATIONS

7. Plaintiffs are world leaders in the innovation and development of high fidelity microphones, mobile communications solutions, and related technologies.

8. In the 1980's, Plaintiffs developed and began selling their first "hands free car kit" that allowed the integration and use of a mobile telephone in a car for hands-free

use.

9. In 2002, Peiker began selling worldwide hands-free car kits called the CKII, which Peiker also developed and produced using its own proprietary technology and patents. Since 2002, Peiker has developed over a hundred different CKII models, each of which is designed to hold and support one of the different mobile phone types available on the market.

10. In his Book Kennedy holds himself out as having, through his company Cellport Systems, Inc. ("Cellport"), designed and developed technology that allows for the connection of wireless telephones and other electronic devices to the audio, power, and antenna systems of vehicles.

11. In 2002, Plaintiffs and Cellport entered into a Global Partners License Agreement that called for the parties to attempt to jointly market and sell certain products developed by Kennedy and/or Cellport. The Global Partners License Agreement terminated in 2003 when Kennedy and Cellport complained about Peiker's sales of its own, independently developed CK II products, which Kennedy and Cellport contended breached the Global Partners License Agreement.

12. In 2003, Cellport sued Peiker in Colorado state court, after which the parties settled, with Cellport granting Plaintiffs a license under certain patents owned by Cellport ("the 2004 License Agreement").

13. In 2009, Cellport initiated litigation against Peiker a second time, claiming that Peiker's sales of additional products independently developed by Peiker breached the 2004 License Agreement ("the 2009 lawsuit"). The 2009 lawsuit remains pending in the

United States District Court for the District of Colorado.

14. In the fall of 2009 Kennedy published his Book "IdeaJacked."

15. Kennedy's Book defines "Ideajacked" as, among other things, an action in which a company steals from a legal owner an idea that is protected by patent or takes undeserved credit for another party's patented idea or invention:

> 1: an action in which an individual or company stole, from its legal owner, an idea that was protected by patent, copyright, trademark or proprietary rights  2: an action in which an individual or company prevented an idea's legal owner from selling products based on that idea  3: an action in which an individual or company took undeserved credit for another party's patented idea or invention .... [Flyleaf.]

16. Kennedy references Plaintiffs throughout his Book "IdeaJacked," falsely accusing them of being "IdeaJackers," of having "IdeaJacked" him, of creating mock-ups of products based on his designs, of their having committed "patent crossings" and "license violations," and so forth.

17. For example, Kennedy in his Book states:

   A. "There was another German company, Peiker, that had mock-ups of products based on our designs that it was marketing to car companies as well." (Page 159.)

   B. "I know that none of the European IdeaJackers, for example, was in the Universal Hands-Free business in 1995 ...." (Page 263.)

   C. "Not only was I looking to persuade our IdeaJackers Cullman and Dabendorf to license the Universal Hands-Free technology patents they were already using, but I also wanted to meet a new participant, Peiker, which had won the Mercedes-Benz business with Motorola. (Page 267.)

D. "While driving to my hotel after a dinner with Peiker's management, it sunk in: As hard as I tried to work cooperatively, the Peiker team was a risk-adverse licensee that preferred to avoid the bleeding edge of technology and the long lead times of cutting edge business development projects." (Page 308.)

E. "...I was certain of that there appeared to be some new level of potential patent crossing that I needed to understand and that all roads led to Peiker". (Page 309.)

F. "...I saw what looked like another PEIKER license violation...." (Page 310.)

G. "Advancing our understanding of the PEIKER IdeaJacking mysteries ...." (Page 311.)

H. "Being IdeaJacked, either by discovering a brand new violator or finding a current licensee under-reporting, is very disheartening." (Page 311.)

I. "I could use Ralph's technical assistance to help analyze and document the specifics of what I believed were the Peiker patent crosses and license violations." (Page 312.)

18. By virtue of the statements set forth above, and other passages throughout his Book, Kennedy states that Plaintiffs have engaged in unethical and unlawful behavior.

19. Kennedy's statements about Plaintiffs are false.

20. Kennedy's statements are defamatory *per se.*

21. Kennedy's statements are not privileged.

22. Kennedy is publishing these statements to third parties with knowledge of the falsity of the statements, in reckless disregard of their truth, and/or negligently.

23. Kennedy is thus maliciously and negligently publishing false and defamatory statements regarding Plaintiffs.

24. The defamatory statements have a tendency to prejudice, have prejudiced, and will continue to prejudice Plaintiffs in their business relationships, the conduct of their business, and Plaintiffs' ability to enter into business relationships with others.

25. Kennedy has been directly mailing and otherwise delivering his Book to persons including Plaintiffs' customers and potential customers.

26. Kennedy has been marketing his Book on his website, which, like his Book, he has named "IdeaJacked." Kennedy's website is located here: www.ideajacked.com.

27. Kennedy's website directs readers to order the Book at Amazon.com, and provides a direct link to the Amazon.com page where the Book can be purchased: www.ideajacked.com/index.php/ideajacked-book.

28. Plaintiffs have sent a letter to Kennedy demanding that he issue a retraction.

29. Kennedy has failed and refused to issue a retraction.

30. As a direct and proximate result of Kennedy's wrongful conduct, Plaintiffs have suffered and/or will suffer substantial economic injury; loss of goodwill; harm to their business reputation; loss of esteem and standing in the community; loss of business opportunities; humiliation, mortification, and embarrassment; and other damages that may arise or be discovered during the course of discovery and the course of this trial.

WHEREFORE, Plaintiffs Peiker Acustic GmbH & Co. KG and Peiker Acustic, Inc. request that this Court enter judgment in their favor and against defendant Pat Kennedy as follows:

1. Order Kennedy to immediately stop selling, marketing, and delivering his Book.

2. Order Kennedy to direct others to forever refrain and desist from selling, marketing, and delivering his Book.

3. Order Kennedy to provide an accounting listing the names and contact information for all persons who have received a copy of his Book.

4. Order Kennedy to deliver a written retraction to each person who has received a copy of his Book, or who has learned of the defamatory statements made in his Book.

5. Order Kennedy to publish a retraction on his website www.ideajacked.com, and to keep it posted there for a period of time not less than the total period of time Kennedy has marketed his Book on that site.

6. Award Plaintiffs compensatory damages equal to the amount of losses they have sustained and will continue to sustain.

7. Award Plaintiffs presumed damages due to the *per se* nature of the defamatory statements.

8. Award Plaintiffs exemplary damages, punitive damages, and other and further relief that the court may deem appropriate.

9. Award Plaintiffs the costs and attorney fees they have incurred as

a result of Kennedy's wrongful acts and in connection with this action.

MILLER CANFIELD PADDOCK AND STONE, PLC

By: *[signature]*
Frederick A. Acomb (P44523)
Mary K. Griffith (P77284)
Attorneys for Plaintiffs
150 W. Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420
acomb@millercanfield.com
griffith@millercanfield.com

Dated: February 26, 2010

17,753,309.1\144359-00001